## Hamaker, Appellant, *v.* Manheim Light, Heat & Power Company.

*Landlord and tenant—Lease—Assignment—Agreement as to repairs.*

Where an agreement in the nature of a lease for a term of years provides that the repairs " shall be borne equally by the parties hereto," and subsequently the lessor sells the annual rental for the term to one party, and conveys the realty to another, the lessee may deduct half of the repairs from the annual rental before paying it over to the party to whom the rental was sold.

Argued Nov. 12, 1903. Appeal, No. 173, Oct. T., 1903, by plaintiff, from judgment of C. P. Lancaster Co., for defendant non obstante veredicto in case of A. G. Hamaker, Transferee of M. E. Bomberger and Jonas B. Erb, Transferees of Lincoln Bomberger, v. The Manheim Light, Heat & Power Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for rental.

The facts appear by the opinion of LANDIS, J., which was as follows:

The question raised in this case is somewhat complicated, and, for a full understanding of it, it is necessary to recite, as briefly as possible, the facts out of which the controversy grows.

On March 25, 1889, the assignees of Elias Bomberger conveyed, in fee simple, to Lincoln Bomberger, a mill property, containing about fourteen acres and fifty-seven perches, located in Penn and Rapho townships and Manheim borough. On July 27, 1895, Lincoln Bomberger entered into an agreement with the Manheim Light, Heat & Power Company, wherein it was recited that: " Whereas, the said party of the first part is seized in fee of and in certain tracts, pieces or parcels of land with the appurtenances, partly in the said Borough of Manheim, partly in the Township of Rapho, and partly in the Township of Penn, county and state aforesaid; and whereas, there is a dam and race or water course built, erected and made in and upon the Chickies Creek, within the said land of the said party of the first part; . . . . that the said party of the first part,

for divers good causes, rents, covenants and considerations here-
inafter specified, has agreed and does hereby agree that the
said party of the second part shall have the absolute and ex-
clusive use and control of the water of the said creek, in con-
nection with the said dam and race, for and during the period
of twenty (20) years . . . . saving and excepting that the said
party of the first part, his heirs and assigns, tenants, employees
and servants, may have the privilege of using said water as a
water power for his mill, erected on the land as aforesaid, be-
tween sunrise and sunset of each and every day; it is expressly
understood and agreed, however, that the said party of the first
part shall, as far as can be arranged, use said water before mid-
day. It is also further agreed that at such times between sun-
rise and sunset of each and every day as the said party of the
first part, his tenants, and employees, are not using the said
water, the said party of the second part may use the same, even
though the time be between sunrise and sunset, and when there
is more water power than is required to operate the mill of the
party of the first part, the party of the second part may then
also use the surplus power." It was also agreed that the party
of the second part should, at " its own proper cost and expense,
well and sufficiently erect, construct and build shafting, belt-
ing, clutches and a turbine wheel, which wheel, when supplied
with a sufficient volume of water, will develop about sixty (60)
horse power capacity," and that it should, at its own expense,
for and during the term of the agreement, keep the same in
good repair and order. In addition, it was mutually under-
stood and agreed that the expense and cost of keeping the dam
and race in proper repair, after the said improvements were made,
should be borne equally by the parties. At the expiration of
the term of twenty years, the wheel and all improvements to
the race, the line-shafting, belting and clutches, as might then
be in the mill, were to become the property of the said Lincoln
Bomberger. It was further stipulated that, if Bomberger
should, within six months from the date of the agreement, pay
to the Electric Light, Heat & Power Company the actual
cost and expenses of the shafting, belting, clutches, turbine
wheel and such other improvements as were contemplated to
be done by the said company, the company should thereupon
pay annually to the said Bomberger the sum of $275.

On July 3, 1896, Lincoln Bomberger assigned unto Jonas B. Erb, his heirs and assigns, the annual rent due, or which might thereafter become due, to him, during the said term, under the said agreement, the proceeds to be devoted to the following purposes : First, to pay a promissory note of $100, drawn by Lincoln Bomberger, indorsed by Jonas B. Erb and discounted by the Keystone National Bank of Manheim ; secondly, to pay a judgment for $500, and interest, which the said Jonas B. Erb held against Lincoln Bomberger, entered in the common pleas of Lancaster county to April term, 1895, No. 686 ; and lastly, to the payment of any moneys which Jonas B. Erb might become liable to pay on a certain note of $3,000 in the Manheim National Bank, drawn by Jacob B. Hostetter, on which the said Jonas B. Erb was one of the indorsers. On October 31, 1900, Jonas B. Erb assigned and transferred all his right, title and interest in the said lease and in the said annual sum reserved, unto A. G. Hamaker and M. E. Bomberger ; and on June 12, 1901, Martha Bomberger, administratrix of M. E. Bomberger, deceased, assigned all the right, title and interest of M. E. Bomberger therein to the said A. G. Hamaker.

Under and by virtue of the provisions of the said agreement, the said Manheim Light, Heat & Power Company expended for repairs the sum $2,928.33, and subsequently, within the stipulated period, and before he made a transfer of his interest in the assignment, Lincoln Bomberger repaid that amount to the company, and thus became entitled to receive the annual rent of $275 provided for therein. It became necessary, however, at a later date, to do certain work for the purpose of keeping the dam and race in proper repair, and, during the year 1899, the light company expended for that purpose at least the sum of $956.67, the one half of which, or $478.33, with interest from January 27, 1900, it claims Lincoln Bomberger and his transferees were bound to pay ; and, in like manner, in the year 1900, at least the sum of $300, for the one half of which, or $150, it claims the plaintiff was also liable.

It appears that Lincoln Bomberger, on August 28, 1896, made a deed of voluntary assignment for the benefit of his creditors to Jonas B. Erb and Israel G. Erb, and, by virtue of the same, the said assignees, on March 12, 1897, conveyed to John B. Erb the fee simple title of the said gristmill and tracts of

land belonging thereto, which are referred to in the aforesaid agreement. At the time of the bringing of this suit, there was due by the electric light company two annual payments of $275 each, or $550; but, having at that time paid the above-mentioned sums of $478.33 and $150 for the keeping of the dam and race in proper repair, the company claimed that it had a right to offset the rent against the outlay thus made, and that, therefore, nothing is due at this time to the plaintiff. On the other hand, the plaintiff claimed that the owner of the fee, and not the transferee of the rent, was bound to pay for these repairs, and that the company was liable to him for the full amount of these annual payments, and must look to the landowner for reimbursement.

It will be observed that at the time of the making of the agreement, Lincoln Bomberger, being the owner of the fee, was entitled, as soon as he repaid to the company the amount of its original expenditures, to receive the annual rent of $275, and, had he retained his position as owner of the fee, as well as of the rent, it is certain that the company could have offset the disbursements made by it for the repairs to the dam and the race against the amount due to him for the rent. Does, then, the fact that he transferred the annual payments to one party, and his fee simple title became vested in another, prevent the company from insisting upon a right which it could have demanded had the relations of all the parties thus continued? The repairs to the dam and the race are as much a part of this agreement as is the payment of the rent, for, without such repairs being made, it may become impossible to use the power for which the rent is to be paid; and, if the company cannot offset these repairs against the rent, but must look to the owner of the fee for the payment, in case the property is incumbered to such an extent as to make it impossible for the company to collect the one half from the fee simple owner, it will occupy the curious position of being obliged to pay the rent, and, yet, perchance, have no responsible party to whom recourse can afterwards be had to recover it. This would seem to be the anomalous situation in which it would be placed, entirely without its consent; for it is a stranger to the transfer, and is, by no means, bound by, or responsible for, the same: Provident Life & Trust Company v. Fiss, 147 Pa. 232.

I am of the opinion that no subsequent act of Lincoln Bomberger could affect the rights of this company, and that those who took his transfer placed themselves merely in the position which he himself formerly occupied. It would seem to be unfair to compel the electric light company to work out the equities, if any there be, which exists between the transferee of the rent and the owner of the fee. They, it seems to me, should do this for themselves, and not involve the company in their controversy. It is of no importance to it who receives the rent. All that it has to do is to pay it when it becomes due. to the proper party, deducting therefrom whatever it had a right to set off against Lincoln Bomberger under the original lease. If this position is maintainable, then the plaintiff, under the facts presented, was not entitled to recover in this case, and the verdict should have been in favor of the defendant.

It is, therefore, not important, at this time, to ascertain whether or not the provisions in the agreement relating to the dam and race are covenants running with the land. If they are, and the owner of the fees, as between himself and the transferee, should pay for these repairs, the transferee can reclaim from him what he is now bound to pay by reason of the set-off claimed in this suit by the defendant, but this question can be passed upon when it is properly before us, and I do not undertake to determine it now.

For the reasons stated, I am of the opinion that the plaintiff showed no cause of action, and, because of this suit, judgment is entered for the defendant on the reserved point, and the rule to show cause why judgment should not be entered non obstante veredicto is made absolute.

Rule made absolute.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Simon P. Eby* and *A. F. Hostetter*, for appellant.—The agreement is a double agreement and the annual payments are not a rent for the use of the power, dam and race.

The covenant to pay half of his repairs is a covenant running with the land and makes the land liable for them : Provident Life & Trust Co. v. Fiss, 147 Pa. 232.

That the covenant to repair in our case runs with the land is fully shown by all our authorities in this state on that subject : Mitchell on Conveyancing, 442; Jamison v. McCredy, 5 W. & S. 129; Carr v. Lowry, 27 Pa. 257; Lindeman v. Lindsey, 69 Pa. 93 ; Horn v. Miller, 136 Pa. 640.

*W. U. Hensel,* with him *C. E. Montgomery,* for appellee.

OPINION BY ORLADY, J., July 28, 1904 :

The rights of the parties to this appeal depend upon the agreement between Lincoln Bomberger and the Manheim Light, Heat & Power Company, dated July 27, 1895. By that agreement it is provided that its provisions " shall be binding upon the heirs, executors, administrators, successors and assigns of the parties thereto." At its date Lincoln Bomberger was the sole owner of the gristmill property, the dam and water power. The interest and property rights passing to the defendant are clearly defined ; and after Bomberger repaid in full to the company the amount of the actual cost and expense of the shafting, etc., and the other improvements contemplated in the agreement, the defendant company would thereafter have its privileges and rights in the agreement and lease by paying to Bomberger " annually the sum of two hundred and seventy-five dollars." It was further · provided, that " it is, however, mutually understood and agreed that the expense and cost of keeping the dam and race in proper repair, after the said improvements shall have been made, shall be borne equally by the parties hereto."

When Bomberger sold the annual rental to one party and his assignee sold the realty to another, there was no change made in the rights and liabilities of the parties as to the necessary repairs to be made to the mill dam and race. These repairs are provided for in the agreement with the same certainty as is the payment of the rent. Bomberger's transferee was in the same position Bomberger had occupied, and would be bound where Bomberger would be liable. As stated by the court below, " If Bomberger had continued to own the land when the repairs were made and had also then owned the annual payments, these repairs could have been offset against him." The defendant cannot claim the rental and refuse to

pay one half the cost of 'keeping the dam and race in proper repair.' Such a condition cannot be sustained under the terms of the agreement in force between the parties. The conclusion reached by the court below is fully justified by the reasons given, and the judgment could well be affirmed on the opinion filed.

The judgment is affirmed.